IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN LECHER-ZAPATA,<br><br>  Plaintiff,<br><br>vs.<br><br>QBE INSURANCE CORPORATION,<br>a Wisconsin corporation, et al.,<br><br>  Defendants. | 4:19-CV-3053<br><br>MEMORANDUM AND ORDER |

The plaintiff in this case, John Lecher-Zapata, is suing several defendants arising out of the alleged mishandling of a Nebraska workers' compensation claim that the plaintiff filed in 2013. Filing 1 at 3. Specifically, the defendants are:

- QBE Insurance—the workers' compensation carrier allegedly responsible for the claim;
- Julie Martin, Brian Nolan, and the Nolan, Olson & Stryker law firm—the lawyers who represented QBE in the workers' compensation case; and
- Rubina Khaleel and the Adelson, Testan, Brundo & Jimenez law firm—the lawyers who were retained by QBE to represent Midwest Demolition, the plaintiff's company, in the workers compensation proceeding.

Filing 1 at 1-2. All the defendants move to dismiss the plaintiff's claims, on various grounds. The Court will grant their motions and dismiss the complaint.

BACKGROUND

The plaintiff alleges that he was both an employee and the owner of Midwest Demolition. Filing 1 at 3. Presumably, he believes he was injured in the course and scope of his employment, because he filed a petition in the Nebraska Workers' Compensation Court in 2013 and an amended petition in 2014. Filing 1 at 3. QBE retained Martin and his law firm as its counsel, and Khaleel and her law firm to represent Midwest Demolition. Filing 1 at 3.

The complicating factor in that litigation seems to have been that the plaintiff filed his petition against Midwest Demolition, his own company. *See* filing 18-2; filing 18-3; filing 18-4. According to the workers' compensation court, the plaintiff sought to fire Khaleel and "direct the defense of his own claim." Filing 18-5 at 1. So, the workers' compensation court explained:

> Unable to resolve the obvious impasse that has arisen, all concerned parties and/or counsel are looking to the Court for guidance. The undersigned indicated at the aforementioned hearing that he does not believe that he has jurisdiction to resolve the underlying contract of insurance dispute as to who represents whom and the authority of any of them to speak for the other. Clearly, issues of contract interpretation; duty to defend and an insured's duty to cooperate among other issues are presented. Again, the Court advised the parties that he does not have authority to resolve these matters. In response, the plaintiff did indicate that he intends to seek relief in the district court. That may well be the forum to resolve the present deadlock.
>
> The Court believes that it is necessary to stay the present proceedings until such time as the parties have resolved their differences either among themselves or via resolution by a court of

> competent jurisdiction. The parties, whether separately or jointly, are to advise the Court when either circumstance has come to pass.

Filing 18-5 at 1-2.

QBE filed a declaratory judgment action against Midwest Demolition in the District Court of Lancaster County, Nebraska, in 2014, seeking to resolve the dispute. Filing 18-6. Ultimately, the parties stipulated to dismiss that case with prejudice in 2019. Filing 18-7. It's not clear from the record how the matter was resolved.

Meanwhile, the plaintiff also tried to get the case into state district court, by filing a "Notice of Removal" in the District Court of Lancaster County purporting to remove the workers' compensation case to the state district court. Filing 15-1. It's not clear what happened to that—presumably, it didn't work out—but the plaintiff also filed his own complaint in the District Court of Lancaster County against the same defendants as in this case (minus Nolan, who hadn't appeared yet). Filing 15-1 at 68-71.

In that case, the plaintiff alleged that the defendants had violated attorney-client privilege by "shar[ing] secret communications" among themselves. Filing 15-1 at 68. The state district court dismissed his complaint for failure to state a claim upon which relief could be granted. Filing 15-1 at 76-79. The Nebraska Court of Appeals affirmed the district court's decision. Filing 15-1 at 72-75.

That brings us to this case, in which the plaintiff complains that the insurers' declaratory judgment action "was filed with Malice and in Bad Faith . . . for the purpose of denying Plaintiff's worker's compensation complaint by attempting to deny coverage. . . ." Filing 1 at 5. Generally, he alleges that the various lawyers conspired to assist QBE in frustrating his workers' compensation claim. *See* filing 1 at 5-6. As a result, he claims, of being

- 3 -

denied medical treatment, his injuries have gotten worse. Filing 1 at 6. So, he demands

> A) Lost wages since the filing of the worker's compensation case; and
>
> B) Medical care for the remaining of the Plaintiff 's life; and
>
> C) An amount for Pain and Suffering; and
>
> D) An Equitable amount for the shortened life span of the Plaintiff contracting [chronic obstructive pulmonary disease] while under employment; and
>
> E) For Punitive and Compensatory Damages according to proof.

Filing 1 at 6.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). The Court may also take notice of public records, such as state court records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

## DISCUSSION

Discussion of the plaintiff's claim(s) necessarily begins with an assessment of what precisely he's claiming. His complaint is primarily just a factual narrative, without expressly identifying any legal theory. *See* filing 1. That, of course, is appropriate under the Federal Rules of Civil Procedure: it is the facts alleged in a complaint, and not the legal theories, that state a claim, and the Court must examine a complaint to determine if the allegations set forth a claim for relief. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). But in the face of the defendants' motions, the plaintiff's brief (filing 32) primarily reasserts his factual narrative (adding additional details) without clearly articulating why it states a claim for relief, or clearly refuting the defendants' arguments that it doesn't. . . and that's less helpful.

In his brief, however, the plaintiff does clearly identify a state-law claim for malicious prosecution[1] as one potential theory of recovery. Filing 32 at 7-8. The plaintiff also suggests, in his response to a separate motion for sanctions, that he's pursuing a professional malpractice claim. Filing 37 at 3. And his consistent references to QBE's alleged "bad faith" suggest a tort claim for bad faith denial of insurance coverage. *See* filing 32 at 6-7. Seeing no other likely candidates, it is on those theories that the Court will focus its attention.[2]

---

[1] Although some authorities reserve the term "malicious prosecution" for the wrongful institution of criminal proceedings, in Nebraska the term includes the tort for wrongful use of civil proceedings. *McKinney v. Okoye*, 806 N.W.2d 571, 577 (Neb. 2011).

[2] Although the plaintiff is not explicit, there is no basis for federal court jurisdiction here other than (tenuous, but unchallenged) diversity of citizenship. And when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits. *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003). It seems apparent that Nebraska law would be applicable here anyway.

## QBE INSURANCE

The Court will begin with the plaintiff's claims against QBE, because for reasons that will become apparent, the claims against the other defendants are primarily derivative of those against QBE.

First, the plaintiff doesn't have a malicious prosecution claim against QBE. In a malicious prosecution case, the necessary elements for the plaintiff to establish are (1) the commencement or prosecution of the proceeding against him or her; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage, conforming to legal standards, resulting to the plaintiff. *Prokop v. Hoch*, 607 N.W.2d 535, 540 (Neb. 2000).

The most obvious defect in the plaintiff's claim is that the proceeding the plaintiff complains about—the declaratory judgment action brought by QBE against Midwest Demolition—wasn't brought against the plaintiff. Nor are there any allegations to establish that it was terminated in even Midwest Demolition's favor—the case was dismissed with prejudice by stipulation under circumstances consistent with a settlement agreement, but the plaintiff says nothing about how the litigation was resolved. Nor, aside from asserting legal conclusions, does he allege *facts* suggesting that there was no probable cause for the proceeding (and based on what the Court does know, there was reason to question whether the plaintiff could effectively control both sides of a workers' compensation proceeding). *See Prokop v. Hoch*, 607 N.W.2d 535, 540 (Neb. 2000).

Nor can the plaintiff claim bad faith denial of insurance coverage. In order to establish a claim for bad faith, a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the

insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Radecki v. Mut. of Omaha Ins. Co.*, 583 N.W.2d 320, 325 (Neb. 1998). But under Nebraska law, a plaintiff cannot maintain a tort claim for common-law bad faith against an insurer of a workers' compensation policy. *Ihm v. Crawford & Co.*, 580 N.W.2d 115, 119 (Neb. 1998); *Lewis v. Carolina Cas. Ins. Co.*, No. 4:19-cv-214, 2020 WL 1072749 at *2 (S.D. Iowa Mar. 5, 2020). And the damages the plaintiff seeks—lost wages and damages for delayed payment—are in the heartland of the workers' compensation remedy. *See Ihm*, 580 N.W.2d at 120-21. So, the plaintiff doesn't state a claim here either.[3]

## NOLAN, OLSON & STRYKER

The plaintiff's malicious prosecution and bad faith claims against Nolan, Olson & Stryker and its attorneys—Martin and Nolan—fail for substantially the same reasons. The allegations against them are allegations of misconduct in their representation of QBE—that is, that they conspired with QBE to unlawfully deny the plaintiff his workers' compensation benefits. But the only theory that can impose liability on them for denying workers' compensation

---

[3] The parties frame this as a jurisdictional issue—that the Nebraska Workers' Compensation Court has exclusive jurisdiction over such claims. Filing 12 at 6-10; filing 15 at 12-13; filing 17 at 7-9. That's not right: a federal district court has subject matter jurisdiction to try an original action concerning a state workers' compensation claim, if the requisites of diversity jurisdiction are met. *Cincinnati Indem. Co. v. A & K Constr. Co.*, 542 F.3d 623, 624 (8th Cir. 2008); *see Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352 (1961); *Home Indem. Co. v. Moore*, 499 F.2d 1202, 1204-05 (8th Cir. 1974). Rather, the rule is that *because* the Nebraska Workers' Compensation Act is exclusive, there is no separate tort claim under Nebraska law for alleged acts arising out of a bad faith delay in providing workers' compensation coverage. *Ihm*, 580 N.W.2d at 120-21. And the plaintiff does not purport to be asserting a claim under the Nebraska Workers' Compensation Act in this case.

benefits is some sort of civil conspiracy—that they conspired with QBE to help it accomplish its allegedly unlawful goal.

> A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. The gist of a civil conspiracy action is not the conspiracy charged, but the damages the plaintiff claims to have suffered due to the wrongful acts of the defendants.
>
> A party does not have to prove a civil conspiracy by direct evidence of the acts charged. It may be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purpose to be accomplished. It is, however, necessary to prove the existence of at least an implied agreement to establish conspiracy. Furthermore, a civil conspiracy is only actionable if the alleged conspirators actually committed some underlying misconduct. That is, a conspiracy is not a separate and independent tort in itself; rather, it depends upon the existence of an underlying tort. *So without such underlying tort, there can be no cause of action for a conspiracy to commit the tort.*

*deNourie & Yost Homes, LLC v. Frost*, 854 N.W.2d 298, 315–16 (Neb. 2014) (emphasis supplied).

Obviously, the problem here is that the plaintiff hasn't alleged an underlying tort. Nolan, Olson & Stryker and its attorneys can only be liable for QBE's allegedly malicious prosecution of its declaratory judgment action against Midwest Demolition, or its allegedly wrongful denial of workers' compensation benefits, if the underlying actions of QBE were tortious. Because

the plaintiff didn't sufficiently allege that, any derivative civil conspiracy claim also fails.

Nor does the plaintiff state a claim for legal malpractice—and he does seem to be aiming that theory at *all* the lawyers. *See* filing 37 at 3. But in Nebraska, while a lawyer owes a duty to his or her client to use reasonable care and skill in the discharge of his or her duties, this duty ordinarily does not extend to third parties, absent facts establishing a duty to them. *Perez v. Stern,* 777 N.W.2d 545, 550 (Neb. 2010). And the starting point for analyzing an attorney's duty to a third party is determining whether the third party was a direct and intended beneficiary of the attorney's services. *Id.* at 551.[4]

Obviously, there was no duty owed here: "a person who is adverse to the attorney's client cannot be a beneficiary of the attorney's retention." *Id.* at 552. And a duty to a third party will not be imposed if that duty would potentially conflict with the duty the attorney owes his or her client. *Id.* Here, the plaintiff had filed a workers' compensation claim *against* QBE in the workers' compensation court. QBE's lawyers owed no duty to the plaintiff, which is fatal to any professional malpractice claim.

Nolan, Olson & Stryker and its attorneys also assert *res judicata* as a defense to the plaintiff's claims, based on the dismissal of the plaintiff's suit

---

[4] The factors to be considered include (1) the extent to which the transaction was intended to affect the third party, (2) the foreseeability of harm, (3) the degree of certainty that the third party suffered injury, (4) the closeness of the connection between the attorney's conduct and the injury suffered, (5) the policy of preventing future harm, and (6) whether recognition of liability under the circumstances would impose an undue burden on the profession. *Id.* at 550-51. But there's no need to go beyond the starting point in this case.

against them in Lancaster County District Court.[5] Federal courts must give preclusive effect to state court judgments, and the scope of the preclusive effect is governed by law of the state from which the prior judgment was rendered— here, Nebraska. *See*, 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 539 F.3d 809, 821 (8th Cir. 2008). Under Nebraska law:

> Claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action. The doctrine rests on the necessity to terminate

---

[5] Although Nolan wasn't party to that suit, and res judicata generally does not bar claims even arising out of the same facts against defendants who were not parties to the first action, *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987), an exception exists under federal and state law, for those who stand in privity to the defendants in the prior suit, *id.*; *see Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996). And that exception is not limited to cases involving the same parties who are in traditional "privity" with defendants in a first action. *Elbert v. Carter*, 903 F.3d 779, 783 (8th Cir. 2018); *see McGill v. Lion Place Condo. Ass'n*, 864 N.W.2d 642, 656 (Neb. 2015). Instead, "claim preclusion applies if the new defendant is closely related to a defendant from the original action—who was not named in the previous law suit, not merely when the two defendants are in privity." *Elbert*, 903 F.3d at 783; *see Baer v. Southroads Mall Ltd. P'ship*, 566 N.W.2d 734, 738 (Neb. 1997). That standard is clearly met for Nolan here.

> litigation and on the belief that a person should not be vexed twice for the same cause.
>
> Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. Issue preclusion applies only to issues actually litigated. Issue preclusion protects litigants from relitigating an identical issue with a party or his privy and promotes judicial economy by preventing needless litigation.

*Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014) (citations omitted). Both doctrines are applicable here.

To begin with, claim preclusion is appropriate. The state district court and Court of Appeals were tribunals of competent jurisdiction, there was a final judgment, it was on the merits, and the controversy was joined between the same parties or their privies. *See Marie v. State*, 922 N.W.2d 733, 738 (Neb. 2019). And to the extent that the plaintiff's claims are premised on some sort of tort arising out of alleged collusion or conspiracy, that claim was directly implicated in the Lancaster County proceeding. The state courts held that the plaintiff could not assert claims arising out of supposedly privileged communications when none of the participants owed him a fiduciary duty. *See* filing 15-1 at 76-79.

Issue preclusion is also appropriate. The underlying scheme alleged is essentially the same as that presented in this case. *Compare* filing 1, *with* filing

15-1 at 66-71. To the extent that the plaintiff is generating new legal theories premised on those allegations, they are also barred: a judgment on the merits operates as a bar not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action. *Baer,* 566 N.W.2d at 738.

In sum, the plaintiff fails to state a claim against Nolan, Olson & Stryker and its attorneys, and any claim he might be asserting is precluded.

### ADELSON, TESTAN, BRUNDO & JIMENEZ

Finally, Rubina Khaleel and the Adelson, Testan, Brundo & Jimenez law firm raise some of the same defenses.[6] For the same reasons already explained, the plaintiff's claims fail as to them as well. The only arguably distinct claim is legal malpractice—but regardless of what the plaintiff's claimed relationship with Midwest Demolition was, the fact remains that the plaintiff had filed a claim *against* Midwest Demolition in the workers' compensation court. There

---

[6] Although neither QBE nor Khaleel and the Adelson, Testan, Brundo & Jimenez law firm assert *res judicata* as a defense, it provides them with one. Even if res judicata hasn't been raised by a party, the Court may dismiss the action *sua sponte,* because res judicata is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit—it is also based on the avoidance of unnecessary judicial waste. *Arizona v. California,* 530 U.S. 392, 412 (2000); *see Hanig v. City of Winner, S.D.,* 527 F.3d 674, 678 (8th Cir. 2008); *see also Herrera v. Wyoming,* 139 S. Ct. 1686, 1701 n.5 (2019); *Meyers v. Roy,* 714 F.3d 1077, 1080 (8th Cir. 2013); *Red River Freethinkers v. City of Fargo,* 679 F.3d 1015, 1026 (8th Cir. 2012); *cf. Bechtold v. City of Rosemount,* 104 F.3d 1062, 1068-69 (8th Cir. 1997). The Court recognizes that it "must be cautious about raising a preclusion bar *sua sponte,* thereby eroding the principle of party presentation so basic to our system of adjudication." *Arizona,* 530 U.S. at 412-13. But there is no hazard here, where the defense *was* raised by some of the defendants and the plaintiff was provided a meaningful opportunity to respond.

is no basis to impute a duty to any of the lawyers sued here when they were charged with representing even a nominally adverse party in the workers' compensation court.

RULE 11 MOTION

Finally, Nolan, Olson & Stryker and its attorneys move for sanctions pursuant to Fed. R. Civ. P. 11. The primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct. *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994); *see Cooter v. Gell & Hartmarx Corp.*, 496 U.S. 384, 392-93 (1990). Sanctions may be warranted when a pleading is presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; contains allegations or factual contentions that lack evidentiary support; or contains denials of factual contentions that are not warranted on the evidence. *See* Rule 11(b); *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006). And in determining whether a pleading was frivolous, groundless, or advanced for an improper purpose, the Court must apply a standard of objective reasonableness. *Pulaski Cty. Republican Comm. v. Pulaski Cty. Bd. of Election Comm'rs*, 956 F.2d 172, 173 (8th Cir. 1992).

*Pro se* complaints are to be read liberally, but they still may be frivolous if filed in the face of previous dismissal involving the exact same parties under the same legal theories. *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987). Even if the plaintiff is acting in subjective good faith, that does not objectively excuse his actions. *Id*. And sanctions have been repeatedly approved when plaintiffs attempt to evade the clear preclusive effect of earlier judgments. *Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015).

The Court is nonetheless unpersuaded *at this point* that sanctions are warranted. The plaintiff brought an action in Lancaster County District Court

several years ago and at least tried to proceed here on a different theory, although his reliance on the same facts results in his claims being precluded regardless. But should the plaintiff not take the hint, this Court would not hesitate—and no court should hesitate—to impose significant sanctions should the plaintiff continue to harass these defendants.

IT IS ORDERED:

1. Rubina Khaleel and the Adelson, Testan, Brundo & Jimenez law firm's motion to dismiss (filing 11) is granted.

2. Julie Martin, Brian Nolan, and the Nolan, Olson & Stryker law firm's motion to dismiss (filing 14) is granted.

3. QBE Insurance's motion to dismiss (filing 16) is granted.

4. The plaintiff's complaint is dismissed.

5. Julie Martin, Brian Nolan, and the Nolan, Olson & Stryker law firm's motion for Rule 11 sanctions (filing 29) is denied.

6. A separate judgment will be entered.

Dated this 29th day of May, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge